**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 30, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

MAUREEN BIGPOND,

      Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

      Defendant-Appellee.

No. 07-6275
(D.C. No. 5:06-CV-01140-D)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **KELLY**, **McKAY**, and **BRISCOE**, Circuit Judges.

_____

Maureen Bigpond appeals from a district court order affirming the

Commissioner's denial of her application for Social Security disability benefits.

Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we

affirm.

_____

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Ms. Bigpond alleged disability beginning on June 1, 1997. Her last insured date was on June 30, 1997. Thus, the critical issue is whether she was disabled during the one-month period prior to her last insured date. An administrative law judge (ALJ) found that she had severe impairments of diabetes mellitus with sequelae, arthritis, and hypertension, but concluded that she had a residual functional capacity for a wide range of light work during the relevant period. Addressing the medical evidence, the ALJ found that

> [i]n essence, she appears to have been in the beginning stages of disease processes which would later dramatically worsen as of 2004, when she was found disabled.[1] However, as of and prior to the date last insured . . . of June 30, 1997, there is no reason the claimant would have been unable to perform a wide range of light exertional tasks.

Aplt. App., Vol. II at 26. The ALJ held that, as of June 30, 1997, Ms. Bigpond could perform her past relevant work, as well as a significant number of other jobs, and was therefore not entitled to disability benefits. The district court affirmed the ALJ's determination.

"We review the district court's decision de novo and independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir.

---

[1] Ms. Bigpond also applied for and was granted Supplemental Security Income benefits. The ALJ's reference here to 2004 appears to be a typographic error because, as the ALJ acknowledged elsewhere in the decision, Ms. Bigpond was found to be disabled under Title XVI as of April 1, *2003*.

2005).  On appeal, Ms. Bigpond raises two claims of legal error, both of which relate to her cardiac condition.  She asserts that the ALJ erred by (1) failing to discuss her cardiac problems in the decision and (2) failing to consult with a medical advisor regarding the onset date of her cardiac disability.

The Commissioner does not dispute that Ms. Bigpond ultimately became disabled in 2003, but contends that substantial evidence supports the ALJ's determination that she was not disabled six years earlier, when she last met the insured status requirements.  It is clear, despite the Commissioner's assertion to the contrary, that the ALJ did not discuss Ms. Bigpond's cardiac condition, either as it existed during the relevant period in June 1997, or thereafter.  In fact, there is no mention of any evidence related to her cardiac problems in the ALJ's decision.  But the question is whether that omission resulted in legal error.

We turn first to Ms. Bigpond's contention that the ALJ was required to consult with a medical advisor regarding the onset date of her cardiac disability.  For this proposition she relies on Social Security Ruling 83-20 and our decision in *Blea v. Barnhart*, 466 F.3d 903 (10th Cir. 2006).  SSR 83-20 provides that an ALJ should consult a medical advisor at the hearing when the onset date of a disability must be inferred.  *See* 1983 WL 31249, at *3.  In *Blea* we held, with respect to the onset date of a disability, that an ALJ "may not make negative inferences from an ambiguous record; rather, it must call a medical advisor pursuant to SSR 83-20." 466 F.3d at 913.  "[T]he issue of whether the ALJ erred by failing to call a

medical advisor turns on whether the evidence concerning the onset of [the claimant's] disabilities was ambiguous, or alternatively, whether the medical evidence clearly documented the progression of his conditions." *Id.* at 912.

*Blea* is factually distinguishable from this case. The claimant in *Blea* sought no medical treatment during an eighteen-month period that included his last insured date. *Id.* at 912-13. Therefore, there were no contemporaneous medical records for the ALJ to consider. We held under those circumstances that the ALJ could not reasonably draw negative inferences from the lack of medical records. *Id.* at 912. In contrast, Ms. Bigpond has medical records both before and after June 1997. Indeed, she points to some of these records in support of her contention that the medical evidence is ambiguous regarding the onset date of her cardiac disability. Thus, in contrast to *Blea*, this is not a case where the medical evidence is ambiguous because adequate medical records are not available.

Ms. Bigpond nonetheless argues that the evidence regarding the onset date of her cardiac disability is ambiguous. We note that the ambiguity must relate to the relevant time period. We consider "whether the evidence is ambiguous regarding the possibility that the onset of her disability occurred before the expiration of her insured status." *Id.* at 911 (quotation omitted). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

-4-

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Here the question is whether the evidence shows any possibility that Ms. Bigpond's cardiac problems were disabling as of June 30, 1997. The Commissioner argues that the evidence clearly documents the progression of her cardiac problems, showing that they did not become disabling until long after her last insured date.

Ms. Bigpond contends that medical records from 1997 indicate ambiguity regarding whether her cardiac problems were disabling at that time. Although she recites what these records say, she does not explain how they show that her cardiac problems made her unable to engage in any substantial gainful activity in June 1997. She emphasizes several ECG reports with notations that an abnormality found "may be [a] normal variant." Aplt. App., Vol. II at 187, 599, 619 (all caps omitted). One of those ECG reports also indicated, "Inferior myocardial infarction . . . probably old," with a warning that "[d]ata quality may affect interpretation." *Id.* at 187 (all caps omitted). In October 1997, Ms. Bigpond sought treatment for light-headedness and left-arm pain. The examination showed a regular heart rate and rhythm. The record states "angina" as one of the purposes of her visit. *Id.* at 601. She was given a prescription for nitroglycerin and referred for a cardiology examination. The notes from the cardiology consultation indicate that she had "multiple complaints" and that her diabetes and hypertension were "poorly controlled." *Id.* at 289. The cardiologist acknowledged her reports of fatigue and dizziness, but stated, "In listening to her

complaints of chest pain there [were] several varieties and I did not think there was a strong history of angina pectoris." *Id.* He scheduled Ms. Bigpond for an exercise tolerance test once her diabetes and hypertension were better controlled.

There is no indication in the record that Ms. Bigpond followed up with an exercise tolerance test. But, as the Commissioner points out, her extensive medical records over the next several *years* show no cardiovascular complaints, as well as normal heart examinations with the exception of some further abnormal ECG reports. In July 2003 she reported a "history of exertional chest discomfort *recently occurring*." *Id.* at 266 (emphasis added). At that time she was referred for a cardiac catheterization and she ultimately underwent bypass surgery in May 2004. We agree with the Commissioner that the evidence is not ambiguous. It fails to show a possibility that Ms. Bigpond's cardiac problems were *disabling* as of June 30, 1997. Therefore, the ALJ did not err in failing to consult with a medical advisor regarding the onset date of her cardiac disability.

We conclude as well that the ALJ did not err in failing to discuss Ms. Bigpond's cardiac problems in the decision. "[A]n ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But Ms. Bigpond argues that an ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. As our above discussion illustrates, however, the evidence of her cardiac problems was not significantly probative of

-6-

whether she was disabled as of June 30, 1997. Nor did the ALJ ignore uncontroverted evidence of a cardiac disability during the relevant time period. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (rejecting claim that ALJ was required to discuss all the evidence where none of the medical evidence conflicted with ALJ's conclusion claimant could perform light work). Therefore, we hold that the ALJ did not commit legal error in failing to discuss Ms. Bigpond's cardiac problems.[2]

      The judgment of the district court is AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

---

[2] We also reject Ms. Bigpond's assertion that, in responding to her claims of error, the Commissioner engaged in post hoc justification of the ALJ's decision. She raised issues regarding what the ALJ *failed to do*. We have simply reviewed the record in order to determine whether, and then to illustrate why, the ALJ's omissions were not legal error. The ALJ was not required to provide grounds in the decision for failing to do what was not required. Thus, neither we nor the Commissioner have relied on a substitute rationale for upholding the ALJ's decision.